UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 22-21599-CIV-SCOLA/GOODMAN

SOUTHERN GEAR & MACHINE, INC.,
et al.,

    Plaintiffs,

v.

DIA SALES COMPANY, INC., *et al*,

    Defendants.
_____/

TIMOTHY MATOOK,

    Counterclaim Plaintiff,

v.

SOUTHERN GEAR & MACHINE, INC., *et al*,

    Counterclaim Defendants
_____/

**REPORT AND RECOMMENDATIONS ON COUNTERCLAIM PLAINTIFF'S
MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES
OF ALLAN ARCH AND KAREN MALIN**

In this declaratory judgment/Fair Labor Standards Act litigation, United States

District Judge Robert N. Scola referred [ECF No. 50] to the Undersigned for a Report and

Recommendations[1] on Counterclaim Plaintiff Timothy Matook's ("Matook") motion [ECF No. 48] to strike affirmative defenses raised in the Answer and Affirmative Defenses Asserted by Counterclaim Defendants Allan Arch ("Arch") and Karen Malin ("Malin") [ECF No. 44].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court deny in large part and grant in small part the motion to strike.

I.     **Background**

Plaintiff Southern Gear & Machine, Inc. ("Southern" or "SGM"), a gear manufacturer, filed [ECF No. 1-1] a lawsuit in Miami-Dade Circuit Court against Dia Sales Company Inc. ("Dia") and Matook, Dia's president, seeking declaratory relief concerning the parties' rights and duties under a Representative Agreement (the "Agreement"). Dia represents manufacturers which make gears, tube bending equipment, and tube cutting equipment. Dia and Matook removed the lawsuit to federal court, based on diversity of citizenship jurisdiction.

According to the Complaint, the Agreement provides that Southern engaged Dia to be its exclusive sales agent for Southern products in Dia's territory and that Southern

---

[1]     Judge Scola's referral Order specifically requires the Undersigned's ruling to be "consistent with" 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of the Local Magistrate Judge Rules, both of which apply to case-dispositive motions. This, in turn, means that the Undersigned needs to use a Report and Recommendations, rather than an Order (which would be for non-dispositive matters).

paid Dia commissions. In March 2022, Southern asked Dia to execute a new agreement but Dia declined. Less than two weeks later, on March 30, 2022, Southern gave written notice of termination of the Agreement, effective April 29, 2022. Later in the day on March 30, 2022, Southern received a letter from Matook's attorney, claiming that Matook had been misclassified as an independent contractor and alleging – for the first time – that he actually was a Southern employee. Southern's Complaint alleges that, on average, it paid Dia between $250,000 to $360,000 in annual commissions.

As outlined in the Complaint, Dia and Matook contend that Southern owes Matook wages, benefits and overtime payments from 2014 to April 29, 2022, and also owes him commissions for sales made by Dia through April 2022.

Southern's lawsuit requests declaratory relief. Specifically, it seeks a judgment declaring that Dia is an independent contractor of Southern and that Matook is not a Southern employee.

Malin is Southern's president and Arch is Southern's CEO.

Claiming to be a Southern employee, Matook filed a Counterclaim [ECF No. 17] against Southern, Arch, and Malin for allegedly violating the FLSA and the Massachusetts Wage Act[2] and for breach of contract and unjust enrichment. Matook alleges that Arch and Malin are his employers because they regularly exercised authority

---

[2] Matook is a Massachusetts resident, according to his Counterclaim. [ECF No. 17].

3

on behalf of Southern, including regularly exercising their authority to hire and fire employees and controlling the company's finances and operations.

Southern claims its relationship is with Dia and is governed by the Agreement and, if anything, Matook is an employee of *Dia.*

Arch and Malin filed an Answer [ECF No. 44], which included 17 affirmative defenses to Matook's Counterclaim. Matook filed [ECF No. 48] a motion to strike 11 of those 17 affirmative defenses (i.e., 4-6, 8-9, 11 and 13-17). Arch and Malin filed [ECF No. 55] an opposition Response and Matook did not file an optional Reply (and the time to do so has expired).

The Undersigned quotes the affirmative defenses at issue in verbatim fashion:

### FOURTH AFFIRMATIVE DEFENSE

Counterclaim Defendants were not Matook's employer. Even if they were, Matook has failed to make reasonable efforts to mitigate his damages and is not entitled to relief. SGM ended its relationship with Dia Sales Company Inc. ("Dia") because Dia refused to sign a new contract. If Dia had entered into the new contract, SGM would not have ended its relationship with Dia.

### FIFTH AFFIRMATIVE DEFENSE

The Counterclaims are barred because Matook was an employee of Dia Sales Company, Inc. and to the extent he is due any relief, that relief is due from Dia Sales Company, Inc., not Counterclaim Defendants.

### SIXTH AFFIRMATIVE DEFENSE

Counterclaim Defendants were not Matook's employer. Even if they were, Counterclaim Defendants are entitled to a set-off for, among other things, amounts paid to Matook from Dia Sales Company, Inc. or for any amounts recovered or which reasonably could have been recovered by Matook from Dia Sales Company, Inc., and amounts recovered by Matook from any

4

collateral source or through his efforts to mitigate damages, including without limitation his continued efforts to sell gears and other products through Dia Sales Company, Inc., as advertised on its website which was updated after SGM filed this lawsuit, as well as any new employment obtained as of July 18, 2022.

\*\*\*

### EIGHTH AFFIRMATIVE DEFENSE

Counterclaim Defendants were not Matook's employer. Even if they were, Matook's claims are barred by the doctrines of unclean hands, laches, waiver, and/or estoppel. Among other facts alleged in SGM's Complaint, Matook represented to SGM that he was operating under his father's contract and acted as if he was operating under his father's contract for years.

### NINTH AFFIRMATIVE DEFENSE

Counterclaim Defendants were not Matook's employer. Even if they were, SGM maintained well-established and effective policies against retaliation such that any alleged retaliation, which Counterclaim Defendants deny, was in violation of SGM's policies.

\*\*\*

### ELEVENTH AFFIRMATIVE DEFENSE

Counterclaim Defendants were not Matook's employer. Even if they were, SGM has made payments to Matook, through Dia Sales Company, Inc., of all sums which may have been due under the Wage Act, G. L. c. 149, § 148 and/or the Massachusetts Minimum Fair Wage Law, G.L. c. 151, § 1 et seq., and their corresponding regulations and/or other applicable law and/or the Fair Labor Standards Act.

\*\*\*

### THIRTEENTH AFFIRMATIVE DEFENSE

Matook's claims should be dismissed, in whole or in part, because they are pre-empted by federal law, including without limitation the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq.

### FOURTEENTH AFFIRMATIVE DEFENSE

Matook's claims should be dismissed, in whole or in part, because Matook failed to exhaust administrative remedies, including without limitation under M.G.L. CH. 149 § 150.

### FIFTEENTH AFFIRMATIVE DEFENSE

Matook's claims for unjust enrichment should be dismissed because there is an adequate remedy at law.

### SIXTEENTH AFFIRMATIVE DEFENSE

Matook's claims for unjust enrichment should be dismissed because SGM did not accept or retain any benefit from Matook under such circumstances to make it inequitable to retain such benefit without payment.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Matook's claims should be dismissed for failure to join an indispensable party, including Dia Sales Company, Inc. and Linda Matook.

[ECF No. 44, pp. 11-14].

**The Parties Contentions About the Challenged Defenses**

From an overarching perspective, Matook contends that the defenses are legal conclusions and/or repetitive denials which fail to allege adequate facts to support them. Arch and Malin say that Matook has failed to allege that he will be prejudiced by the inclusion of the affirmative defenses he seeks to strike -- and that his motion should be denied on this ground alone. They also say that the appropriate remedy for a denial-type of affirmative defense is to treat it as a denial, and not to strike it.

Specifically, Matook asserts the following arguments (and Arch and Malin provide the following responses):

He argues that the Fourth defense is a mere denial and should be struck as redundant, given that Arch and Malin already denied the existence of an employer-employee relationship in their Answers. In addition, he says there is no duty to mitigate FLSA claims, and he also contends that signing "an unreasonable contract of adhesion is not a mitigating act, even though it is the purported reason for Matook's termination." [ECF No. 48, p. 3].

But Arch and Malin say that Matook has asserted a retaliation claim, which *does* trigger a duty to mitigate damages, which they say is a viable defense. They also contend that the issue of whether the contract is an adhesion contract is a factual issue to be litigated.

Matook also contends that the fifth defense is simply another denial and should be struck because the answers already deny the existence of an employer-employee relationship.

In response, Arch and Malin say the issues about Matook's status as an employee, duties owed and preemption should be resolved at trial, not stricken at this procedural point in the case. [The Court notes that preemption and duties owed are not expressly included in this defense].

Concerning the sixth defense, Matook again says it is a mere denial. He also argues that it is a bare-bones conclusory defense which violates Rule 8's notice-pleading requirement. And he says Defendants did not assert facts which would give him fair notice of what the defense is and the grounds upon which it is based. He further contends that overtime pay is a statutory obligation which is not subject to set-off.

Arch and Malin say that a set-off is a viable FLSA defense if it will not cause a plaintiff's wages to dip below the statutory minimum. Moreover, they say that a set-off is a legitimate defense against Matook's *other* claims, such as his allegation that he is owed money based on Southern's failure to pay commissions.

Matook brands the eighth defense as another mere denial. He also argues that the doctrines of waiver, laches, and estoppel are inapplicable to FLSA claims.

But Arch and Malin say that estoppel is a proper defense and that they alleged supporting facts, such as Matook's representation to Southern that he was operating under his father's contract. They did not respond to the argument that waiver and laches are inapplicable.

Similar to his other challenges, Matook classifies the ninth defense as a simple denial. He also contends that violation of internal policies does not absolve the perpetrators of liability (or the employer who is on notice of the wrongdoing).

Arch and Malin's response is that the defense raises issues of vicarious liability, which should be decided at trial.

Matook describes the eleventh defense as impermissibly vague and conclusory. For example, he says, it provides no facts about the amount of any payment, the date of any payment and/or the method of payment. He also challenges it as a mere denial.

But Arch and Malin say that their defense places Matook on notice of their position and the need to obtain discovery to determine how Dia compensated him. Given the need to obtain discovery, they say, an order striking the defense would be premature.

Matook challenges the thirteenth defense as impermissibly conclusory. He argues that there is no detail about how ERISA purportedly preempts his claims.

Yet Arch and Malin argue that ERISA preempts his claims to participate in Southern's employee benefit plan, including health insurance, vacation, participation in the retirement plan and contributions which Southern made for its employees in the retirement plan. They further point out their belief that this defense "will be more flushed out through discovery or withdrawn."

Matook argues that the fourteenth defense is impermissibly vague and conclusory. He says it does not provide any detail about the administrative remedies he supposedly should have taken.

Arch and Malin disagree, arguing that the Massachusetts Wage Act has administrative exhaustion requirements. They again raise their belief that the defense "will be more flushed out through discovery or withdrawn."

Matook contends that the fifteenth defense is improper because a plaintiff is permitted to plead his claims in the alternative.

Arch and Malin take issue with this position. Acknowledging that a plaintiff like Matook may plead claims in the alternative, they say his unjust enrichment claims are barred because there is an adequate remedy at law. They explain that they asserted this defense to put Matook on notice that they will argue that the unjust enrichment claim should fail if it is later determined that there is a valid contract.

Matook says that the sixteenth affirmative defense is a mere denial and is impermissibly vague and conclusory.

Not surprisingly, Arch and Malin dispute this. They argue that the issue of whether Southern accepted or retained any benefit is a factual issue, the details of which should be revealed in discovery.

Matook contends that the seventeenth defense is impermissibly vague and conclusory. He also says that failure to join indispensable parties is more properly brought as a motion to dismiss, not as an affirmative defense. He further argues that Arch and Malin did not *explain* why Dia and Linda Matook are indispensable parties, as opposed to being mere witnesses.

Arch and Malin argue that discovery should reveal Linda Matook's role and that they put Matook on notice that they will assert the defense.

## II.     Legal Standard

The Court, either on its own or on a motion made by a party, is permitted to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(1)-(2). "Courts 'have broad discretion when considering a motion to strike,' however, 'striking defenses from a pleading' remains a 'drastic remedy to be resorted to only when required for the purposes of justice' and only when the stricken material has 'no possible relation to the controversy.'" *FAST SRL v. Direct Connection Travel, LLC*, 330 F.R.D. 315, 317 (S.D. Fla. 2018) (quoting *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-61670, 2013 WL 4496510, at *2 (S.D. Fla. Aug. 22, 2013)).

"Courts have developed two schools of thought regarding the pleading standard required for affirmative defenses, and the Eleventh Circuit has not yet resolved the split in opinion." *Ramnarine v. CP RE Holdco 2009-1, LLC*, No. 12-61716-CV, 2013 WL 1788503, at *1 (S.D. Fla. Apr. 26, 2013). Some courts in the Eleventh Circuit have concluded that affirmative defenses are subject to the heightened pleading standard of Rule 8(a), as set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See, e.g.*, *Moore v. R. Craig Hemphill Assocs.*, No. 3:13-CV-900-J-39, 2014 WL

2527162, at *2 (M.D. Fla. May 6, 2014); *see also v Adams. JP Morgan Chase Bank, N.A.*, No. 3:11-CV-337-J-37, 2011 WL 2938467, at *2-3 (M.D. Fla. July 21, 2011).

Others have held that affirmative defenses are subject to the less-stringent standard under Rules 8(b) and 8(c), and that affirmative defenses need only "provide fair notice of the nature of the defense and the grounds upon which it rests." *See, e.g., Sparta Inc. Co. v. Colareta*, No. 13-60579-CIV, 2013 WL 5588140, at *3 (S.D. Fla. Oct. 10, 2013) (denying in part plaintiff's motion to strike defendant's affirmative defenses because the affirmative defenses provided plaintiff with fair notice); *Ramnarine*, 2013 WL 1788503 at *1 (denying motion to strike affirmative defenses). The Eleventh Circuit has stressed that providing notice is the purpose of Rule 8(c) and it simply guarantees that the opposing party has fair notice of issues that may be raised at trial so that they are prepared to properly litigate the issues. *Id*. at *3 (quoting *Hassan v USPS*, 842 F.2d 260, 263 (11th Cir. 1988)).

As this Court has previously opined, the difference in the language between Rule 8(a) and (b) is "subtle but significant." *Northrop & Johnson Holding Co., Inc.*, 16-cv-63008-BLOOM/Valle, 2017 WL 5632041, at *2 (citing *Laferte v. Murphy Painters, Inc.*, No. 17-CIV-60376, 2017 WL 2537259, *2 (S.D. Fla. June 12, 2017)). While Rule 8(a) requires "a short and plaint statement of the claim showing that the pleader is entitled to relief," Rule 8(b) merely requires that a party "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(a)-(b). In plain terms, the language of Rule 8(a)

12

requires the party to "show" that they are entitled to relief, while Rule 8(b) does not. *See Moore,* 2014 WL 2527162, at *2.

This Court has previously concluded that "affirmative defenses are not subject to the heightened pleading standard elucidated in *Twombly* and *Iqbal.*" *See Northrop*, 2017 WL 5632041, at *2; *Laferte,* 2017 WL 2537259, at *2; *Abajian v. HMSHost Corp.*, No. 20-cv-60324-BLOOM/Valle, 2020 WL 1929134, *3 (S.D. Fla. Apr. 21, 2020); *S.E.C. v. 1 Global Capital LLC,* 331 F.R.D. 434 (S.D. Fla. 2019); *Longhini v. Kendall Lakes Office Park Condo Ass'n, Inc.,* No. 20-cv-23352-BLOOM/Louis, 2020 WL 7074641, at *3 (S.D. Fla. Dec. 3, 2020).

As noted by one district court, "to artificially supply Rules 8(b)(1) and 8(c)(1) with the unique language of Rule 8(a)(2) requiring 'showing' is to contravene well-established principles of statutory construction, which have been found applicable to interpreting the Federal Rules of Civil Procedure." *E.E.O.C. v. Joe Ryan Enterps., Inc.,* 281 F.R.D. 660, 663 (M.D. Ala. 2012) (citing *Bus. Guides v. Chromatic Commc'ns Enterps., Inc.,* 498 U.S. 533, 540-41, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991)).

Furthermore, "when one considers that a defendant must answer the complaint within 21 days, imposing a different standard for defenses is not unfair." *Floyd v. SunTrust Banks, Inc.,* No. 1:10-cv-2620-RWS, 2011 WL 2441744, at *8 (N.D. Ga. June 13, 2011).

The Undersigned has in many cases in recent years decided to follow the approach that affirmative defenses are not subject to the heightened pleading standard, and in the absence of contrary guidance from the Eleventh Circuit, I see no reason to change that current[3] view now. *See, e.g., Isola Condo. Assoc., Inc. v Rockhill Ins. Co.*, No. 21-23114, at *1 (S.D. Fla. Nov. 15, 2021); *see also, generally, Longhini v. Power One Prof'l and Med. Ctr. Condo. Assoc., Inc.*, No. 21-22106, 2022 WL 110699, at *2-3 (S.D. Fla. Jan. 12, 2022) (noting that *Ramnarine* "thoroughly analyzes both approaches" and concluding that its reasoning is "persuasive"); *Bluegreen Vacations, Unlimited, Inc. v. Timeshare Termination Team, LLC*, No. 20-cv-25318, 2021 WL 2476488 (S.D. Fla. June 17, 2021).

Nevertheless, even under this standard, "'an affirmative defense must be stricken when the defense is comprised of no more than 'bare-bones, conclusory allegations' or is 'insufficient as a matter of law.'" *Northrop*, 2017 WL 5632041, at *3 (quoting *Adams*, 294 F.R.D. at 671 and *Home Mgmt. Sols., Inc. v. Prescient, Inc.*, No. 07-20608-CIV, 2007 WL 2412834, at *2 (S.D. Fla. Aug. 21, 2007)). "A defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a

---

[3] In *V/G Investment, Inc. v. M/V Pacific II*, No. 12-20543-CIV, 2102 WL 3064097, at *1 (S.D. Fla. July 27, 2012,), the Undersigned noted the difference in the pleading requirements under Rule 8(a) and (b) but concluded that affirmative defenses must comply with the pleading requirements of Rule 8(a) and allege plausible facts supporting each affirmative defense. The Undersigned no longer uses that approach (of requiring affirmative defenses to meet the heightened pleading requirements).

14

matter of law." *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002).

As noted, Matook contends that several affirmative defenses are mere denials. But to the extent that an affirmative defense is actually a simple denial, "the appropriate course of action is for a court simply to treat the alleged affirmative defense as a denial and not to strike it." *V/G Inv., Inc.*, 2012 WL 3064097, *4; *Wyne v. Carnival Corp.* No. 22-21638-Civ, 2022 WL 6127876, at *2 (S.D. Fla. Oct. 7, 2022) ("[T]he appropriate remedy is not to strike the . . . affirmative defense, but to treat it as a specific denial."); *Bruce v. Ocwen Loan Serv., LLC*, No. 8:12–cv–1561–T–24 MAP, 2012 WL 4867224, *2 (M.D. Fla. Oct. 15, 2012) ("While these defenses appear to be denials of [the] [p]laintiff's claims, rather than true affirmative defenses, the Court finds that there is no prejudice to [the] [p]laintiff by allowing them to remain."); *Zeron v. C & C Drywall Corp., Inc.*, Case No. 09–60861–CIV-Cohn, 2009 WL 2461771, *2 (S.D. Fla. 2009) ("[W]hen a party incorrectly labels a negative averment as an affirmative defense rather than as a specific denial, the proper remedy is not to strike the claim, but rather treat it as a specific denial." (cleaned up)).

### III. Analysis/Rulings

The Undersigned will not recommend that Judge Scola strike the fourth affirmative defense. The first sentence is a denial, to be sure, but a denial labeled as a defense need not be stricken. Instead, the Court should treat it as a denial. Matook has not established that a failure to mitigate damages is not a viable defense in a retaliation

claim. The argument that SG would not have ended its relationship with Dia if Dia had entered into a new contract is not accompanied by a label classifying the defense, but it is a factual argument appropriate for trial. Moreover, it gives Dia adequate notice of a position/defense and therefore need not be stricken.

The fifth affirmative defense need not be stricken because it is only a simple denial and will be treated as such.

The Undersigned recommends that Judge Scola not strike the sixth affirmative defense because a mere denial need not be stricken and because a set-off could be a viable defense at trial.

The eighth affirmative defense should be stricken, in part. First, the portion which is a mere denial need not be stricken, for the reasons already discussed. Second, Arch and Malin did not respond to the argument that waiver and laches are inapplicable to FLSA cases. It is not the Court's job to craft arguments for litigants, so the Undersigned recommends that Judge Scola strike that portion of this affirmative defense (i.e., the portion asserting waiver and laches). But, in addition, Matook is correct on the merits. *See e.g., Judkins v. Bloomen Intern., Inc.*, No. 8:09-cv-02538, 2010 WL 2510655, at *4 (M.D. Fla. June 21, 2010). So the waiver and laches defenses asserted here should be stricken.

Although the general rule is that estoppel is not a viable defense in an FLSA case, there is an exception. Because Arch and Mailin are not foreclosed from seeking to

16

demonstrate the existence of the exception, their estoppel defense should not be stricken. *Id*.

The Undersigned recommends that Judge Scola deny the motion to strike the ninth affirmative defense because it is, in part, a simple denial and because the remainder places Matook on notice of a theory implicating vicarious liability.

The eleventh affirmative defense should not be stricken because it is, in part, only a simple denial and because it places Matook on notice of the defense and the need to obtain discovery on the issue of how Dia compensated Matook.

The Court should not strike the thirteenth affirmative defense, which asserts the possibility that ERISA preempts Plaintiff's requested relief. *See* 29 U.S.C. § 1144 (preempting "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44-46, 52-57 (1987); *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 447 (1st Cir. 1995) ("ERISA preempts all state law causes of action for benefits due under an ERISA plan." (citing *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 16 (1st Cir. 1991) (ERISA preemption is "extensive in its scope")).

Matook contends that this defense lacks adequate detail and is impermissibly vague and conclusory. The Undersigned disagrees. It places Matook sufficiently on notice of the defense. Judge Scola should deny this portion of the motion to strike.

The Court should deny the motion to strike the fourteenth affirmative defense because Matook also brought his claims under the Massachusetts Wage Act, which has an administrative exhaustion requirement. Thus, a defense of failure to exhaust administrative remedies could be a viable defense for this state law claim. The defense provides sufficient notice and Matook can pursue discovery if additional facts concerning this theory are desired.

The fifteenth affirmative defense is adequate because it places Matook on notice that Counterclaim Defendants will argue that unjust enrichment should not be available if it is determined that a valid contract exists (which, in turn, means there is an adequate remedy at law). The Court should deny this portion of the motion to strike.

Judge Scola should not strike the sixteenth affirmative defense because it is based on a factual issue about whether SGM retained any benefit from Matook. To the extent this is a de facto denial of Matook's allegations, it should be simply treated as such (and not stricken).

The Undersigned is not persuaded by Matook's argument that the seventeenth affirmative defense is impermissibly vague and conclusory. It places Matook on notice about the nature of their defense – failure to join an indispensable party. The mere fact that Matook says this theory is more typically brought as a motion to dismiss does not mean that it cannot be asserted as an affirmative defense. Judge Scola should deny this portion of the motion to strike.

---
**IV.  Objections**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on November 9, 2022.

/s/ Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola
All counsel of record